1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   AGUSTIN ARGENAL,                           No. C 13-01947 CRB

12          Plaintiff,                          **ORDER RE CROSS-MOTIONS FOR
                                                SUMMARY JUDGMENT**
13      v.

14   REASSURE AMERICA LIFE INSURANCE
     COMPANY, MACCABEES MUTUAL LIFE
15   INSURANCE COMPANY, ROYAL
     MACCABEES LIFE INSURANCE
16   COMPANY, SWISS REINSURANCE
     AMERICA CORPORATION, and DOES 1-50,
17   inclusive,

18          Defendants.

19   _____

20          In this insurance case, Agustin Argenal ("Plaintiff") alleges breach of contract, breach

21   of the covenant of good faith and fair dealing, and intentional misrepresentation against

22   Reassure America Life Insurance Company, Maccabees Mutual Life Insurance Company,

23   Royal Maccabees Life Insurance Company, Swiss Reinsurance America Corporation, and

24   Does 1-50 (collectively "Defendants").  Now before the Court are Plaintiff's Motion for

25   Partial Summary Judgment ("MPSJ") and Defendants' Motion for Summary Judgment or, in

26   the alternative, Partial Summary Judgment ("MSJ").  The Court DENIES Plaintiff's MPSJ

27   and GRANTS in part and DENIES in part Defendants' MSJ.

28   //

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

## I.     BACKGROUND

Plaintiff received his medical degree from UC Davis in 1975.  See Argenal Curriculum Vitae at 1, Exh. 5 to Declaration of Margie R. Lariviere ("Lariviere Decl.") (dkt. 26).  Plaintiff is Board Certified in Internal Medicine and Cardiovascular Medicine.  Id. at 2. At all relevant times, Plaintiff has worked as a cardiologist.[1]  See Complaint ¶ 10 (dkt. 1); MSJ at 2 (dkt. 32).  Prior to the onset of Plaintiff's disability, he worked as the Director of the Cardiac Catheterization Laboratory at the John Muir Medical Center, and was a partner at the Contra Costa Cardiology Medical Group.  See Declaration of Agustin Argenal ("Argenal Decl.") ¶ 2 (dkt. 42-2).

Since May 1, 1988, Plaintiff has been insured under a long-term disability coverage insurance policy, Policy No. 8115686 (hereinafter "Policy"), issued by Defendants.[2]  See MPSJ at 2 (dkt. 18).  Although the original Policy contained definitions of Total and Residual Disability, Plaintiff purchased an amendment to the Policy titled the "Regular Occupation Amendment" ("Amendment"), which defined Total and Residual Disability as follows:

> TOTAL DISABILITY means that, due to Accident or Sickness, you cannot perform the substantial and material duties of your regular occupation. Regular occupation means your regular occupation at the time Disability began. This definition of Total Disability will apply for the period of time shown on the Schedule Page as Regular Occupation Period. Thereafter, Total Disability means that due to Accident or Sickness you cannot perform the substantial and material duties of your Regular Occupation and are not engaged in your regular or another occupation.

> RESIDUAL DISABILITY means that you are engaged in your Regular Occupation and your Income is reduced, due to Accident or Sickness, by at least 20% of your Prior Income.  After the Regular Occupation Period, Residual Disability means that you are engaged in your regular or another

---

[1] However, as discussed infra, the parties dispute the extent of Plaintiff's specialization within cardiology.

[2] Maccabees Mutual initially issued the Policy to Plaintiff.  See Complaint ¶ 2.  Around 1990, Maccabees Mutual merged with Royal Insurance and became Royal Maccabees.  Id.  Around 1999, Royal Maccabees merged with Swiss Reinsurance and became Reassure.  Id.

occupation and your Income is reduced, due to Accident or Sickness, by at least 20% of your Prior Income.

See Policy at 11 (dkt. 18-3).  Under the Amendment, the Regular Occupation Period is "lifetime."  Id. at 2.  The Amendment acts as an "own occupation" rider wherein Plaintiff may receive Total Disability benefits for life so long as he cannot perform the substantial and material duties of his regular occupation, regardless of whether he can perform the duties of, or is engaged in, another occupation.  See MPSJ at 2.  Residual Disability benefits are payable only to age sixty-five.  See Complaint ¶ 13.  Plaintiff will be sixty-five years old on June 6, 2014.  See Plaintiff's 1988 Initial Application for Insurance with Defendants, Exh. 1 to Declaration of Wanda Yenkel ("Yenkel Decl.") (dkt. 27) (listing Plaintiff's date of birth as June 6, 1949).

On July 30, 2010, Plaintiff underwent a five-vessel coronary bypass surgery.  See MPSJ at 4.  As a result of the surgery, Plaintiff experienced hematoma and pain in his right leg, numbness in his left hand, and back pain.  Id.  Plaintiff then underwent lumbar surgery to improve symptoms related to a narrowed spinal canal, including right foot drop and back pain.  Id.  Plaintiff also underwent an unsuccessful surgery for left ulnar nerve release.  Id.  On August 18, 2010, Plaintiff filed a disability claim with Defendants.  Id.

On October 4, 2010, Plaintiff returned to work at the Contra Costa Medical Group.  See Argenal Decl. ¶ 10.  Plaintiff's attending physician diagnosed Plaintiff with lower back pain, cervicalgia, footdrop, peroneal nerve palsy, and spinal stenosis, with a secondary diagnosis of coronary artery disease.  See 10/18/12 Attending Physician Statement, Exh. 4 to Yenkel Decl.  Plaintiff's physician set an occupational restriction of "no cath lab work"

United States District Court
For the Northern District of California

1  beginning on September 21, 2010 to "indefinite," and daily living restrictions of "no

2  walking up hills, standing for prolong periods of time, no wearing lead aprons." Id.  As a

3  result of his condition, Plaintiff has not returned to his position at the John Muir Medical

4  Center and has resigned his position as Director of the Cardiac Catheterization Laboratory.

5  See Argenal Decl. ¶ 11.  There is no dispute that since Plaintiff became disabled in 2010, he

6  has not performed any surgical procedures, but has continued to work approximately 36

7  hours per week at the Contra Costa Cardiology Medical Group, performing clinical-related

8  duties.  See MPSJ at 4.

9     On January 26, 2011, Reassure approved Plaintiff's claim under the Residual

10 Disability provision retroactive to July 28, 2010.  See Complaint ¶ 12.  Defendants have

11 never contested the nature or extent of Plaintiff's disabilities.  Rather, Reassure has

12 explained to Plaintiff that "because you are continuing to perform some of your

13 occupational duties, benefits are being assessed under the Residual Disability provision of

14 your policy."  See Yenkel Decl. ¶ 21.  It is undisputed that Reassure has paid Residual

15 Disability benefits to Plaintiff without interruption or delay since he filed his initial claim.

16 See MSJ at 9.

17    On August 6, 2012, Plaintiff informed Reassure that he believed he was totally

18 disabled under the Policy and that his claim was being improperly paid under the Residual

19 Disability provision.  See MPSJ at 4.  By letter dated November 13, 2012, Reassure upheld

20 its decision to approve benefits under the Residual Disability provision, describing that

21 "[s]ince Dr. Argenal continues to perform a substantial portion of the work he performed

22 pre-disability, he is not totally disabled."  See Denial Letter, Exh. 8 to Yenkel Decl., at 3.

4

**United States District Court**
For the Northern District of California

Plaintiff filed suit against Defendants on April 29, 2013, alleging breach of contract, breach of the covenant of good faith and fair dealing, and intentional misrepresentation. See generally Complaint.  On November 8, 2013, Plaintiff moved for partial summary judgment, requesting that the Court find that the Policy's Residual Disability provision is invalid under California law.  See generally MPSJ.[3]  On January 28, 2014, Defendants filed their Motion for Summary Judgment or, in the alternative, Partial Summary Judgment.  See generally MSJ.

## II.    LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).  A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden is on the moving party to demonstrate that there is no genuine dispute with respect to any material fact and that it is entitled to judgment as a matter of law.  Id. at 323.  A genuine issue of fact is one that could reasonably be resolved in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "material" only if it could affect the outcome of the suit under the governing law.  Id. at 248-49.

---

[3] The Court continued the hearing on Plaintiff's MPSJ in order to hear both motions together. See Order (dkt. 41).

United States District Court
For the Northern District of California

If the moving party does not satisfy its initial burden, the nonmoving party has no obligation to produce anything and summary judgment must be denied.  See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If, on the other hand, the moving party has satisfied its initial burden of production, then the nonmoving party must produce sufficient evidence to support its claim or defense.  Id. at 1103.  The nonmoving party must "set out 'specific facts showing a genuine issue for trial.'"  See Celotex, 477 U.S. at 324-25 (quoting Fed. R. Civ. P. 56(c)).  If the nonmoving party fails to make this showing, the moving party is entitled to judgment as a matter of law.  Id. at 323.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  Anderson, 477 U.S. at 255.  However, it is not a court's task "to scour the record in search of a genuine issue of triable fact."  See Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted).  Rather, a court is entitled to rely on the nonmoving party to identity with reasonable particularity the evidence that precludes summary judgment.  Id.

## III.   DISCUSSION

Plaintiff moves for partial summary judgment on the ground that the California definition of Total Disability must be applied here and therefore, the Policy's Residual Disability provision is invalid and contradicts California law.  Defendant moves for summary judgment on all of Plaintiff's causes of action as well as Plaintiff's claim for punitive damages.

//

//

United States District Court
For the Northern District of California

**A.      The Policy's Provisions Do Not Conflict with California Law**

The California Supreme Court has defined Total Disability as "such a disability that renders the insured unable to perform the substantial and material acts necessary to the prosecution of a business or occupation in the usual or customary way."  See Erreca v. Western States Life Ins. Co., 19 Cal. 2d 388, 396 (1942).[4]  However, "the term 'total disability' does not signify an absolute state of helplessness."  Id.  An insured is not precluded from claiming total disability where he is only able to perform sporadic tasks or handle inconsequential details incident to his occupation.  Id.  "Conversely, the insured is not totally disabled if he is physically and mentally capable of performing a substantial portion of the work connected with his employment."  Id.  Courts interpreting Erreca have found an insured totally disabled "if he is unable to perform the substantial and material duties of his own occupation in the usual and customary way with reasonable continuity."  See Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1006 (9th Cir. 2004).

Defendants do not dispute that California's definition of Total Disability is controlling here.  See Defendants' Opposition (Opp'n) (dkt. 25) at 9.  Nevertheless, Plaintiff argues that the Court must find the Residual Disability provision[5] invalid because it is written so

---

[4] Although Erreca involved a non-occupational policy, courts have held that its holding applies to both general and occupational disability insurance policies.  See Hangarter, 373 F.3d at 1006 (citing Austero v. Nat'l Cas. Co., 84 Cal. App. 3d 1 (1978)).

[5] In his Reply, Plaintiff raises the argument that the Policy's definition of Total Disability is also unlawful and should be invalidated.  See Plaintiff's Reply at 4 (noting that Reassure does not assert in its Opposition that the Policy's Total Disability definition is valid and therefore, "the Policy's definition is void and must be stricken").  Plaintiff did not make this argument in his MPSJ, and the three sentences allocated to this issue in his Reply are unpersuasive.

United States District Court
For the Northern District of California

broadly as to circumvent the California definition of Total Disability.[6] See MPSJ at 9.

Plaintiff explains:

> This provision places restrictions upon a claimant that far exceed the California definition of Total Disability in that the California definition does not prohibit a claimant from continuing in their regular occupation even if they are totally disabled. . . . [I]f one is unable to perform the substantial and material duties of their occupation in the usual and customary way, they are totally disabled regardless of whether or not they are able to continue to perform tasks incidental to their regular occupation.

Id. Further, Plaintiff asserts that Reassure "created a situation in which, unless a disabled surgeon gives up every single aspect of his former practice, Reassure can say that they are still 'engaged in their regular occupation' and therefore only qualify for residual benefits." Id.[7]

However, courts "must interpret the language in context, with regard to its intended function in the policy." See Dym v. Provident Life and Acc. Ins. Co., 19 F. Supp. 2d 1147, 1150 (1998) (citing Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1265 (1992)). The Policy's Total Disability provision states that if an insured "cannot perform the substantial

---

[6] Plaintiff does not cite any authority for this argument, and seems to rely solely on the "well-established principal of reading an insurance policy in favor of the insured." See MPSJ at 9 (citing Gross v. UnumProvident Life Ins. Co., 319 F. Supp. 2d 1129, 1149 (C.D. Cal. 2004)). Without any other precedent for invalidating the Residual Disability provision, this general concept of insurance policy interpretation is insufficient. In his Reply, Plaintiff cites Joyce v. United Ins. Co. of America, 202 Cal. App. 2d 654 (1962) for the proposition that failed attempts to return to one's occupation should not be held against the insured. See Plaintiff's Reply at 5. This holding is inconsequential here not only because Plaintiff has not "failed" in his attempt to return to work, but also because it has no bearing on the issue of whether the Policy's Residual Disability provision conflicts with California law. See Dytch v. Yoon, No. 10-2915, 2011 WL 839421, at *3 (N.D. Cal. March 7, 2011) (finding that it is improper for a court to consider an issue raised for the first time in a reply brief) (citing State of Nev. v. Watkins, 914 F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot raise a new issue for the first time in their reply briefs.")).

[7] As discussed infra, the parties dispute whether Plaintiff is still able to perform the substantial and material duties of his regular occupation. In any case, none of the authority cited by Plaintiff stand for the proposition that an insured who is still able to perform the material duties of his own occupation would qualify for Total Disability benefits.

United States District Court
For the Northern District of California

and material duties of [his] regular occupation," he will be considered totally disabled regardless of whether he is still able to perform immaterial or insubstantial duties of his regular occupation or is engaged in another occupation entirely. See Policy at 11. The Policy defines Residual Disability as when the insured is "engaged in [his] Regular Occupation and [his] Income is reduced, due to Accident or Sickness, by at least 20% of your Prior Income." Id. Reading the two definitions together, and taking into account their intended functions in the Policy, the Residual Disability provision cannot reasonably be read as "unless a disabled surgeon gives up every single aspect of his former practice . . . they are still 'engaged in their regular occupation' and therefore only qualify for residual benefits." See MPSJ at 9. Plaintiff's interpretation of the Residual Disability provision clause "would defeat the very purpose of insurance against total disability, because it rarely happens that an insured is so completely disabled that he can transact no business duty whatsoever." See Gross, 319 F. Supp. 2d at 1141.

Moreover, Plaintiff concedes that "Residual Disability provisions are not inherently invalid and courts have been reluctant to render these provisions meaningless." See MPSJ at 9 (citing Gross, 319 F. Supp. 2d at 1149). Plaintiff knowingly purchased a disability insurance policy titled "Total and Residual Disability Income Policy." If Plaintiff solely wished to obtain coverage under a total disability policy, he could have done so. By purchasing a Residual Disability provision, Plaintiff "gained the certainty that he would receive benefits even if the sickness or accident affected only one of his duties or limited his output." See Helus v. Equitable Life Assur. Society of U.S., 309 F. Supp. 2d 1170, 1178 (N.D. Cal. 2004). Even if Plaintiff were entitled to Total Disability benefits under the

Policy, this would not be a basis for the Court to invalidate the Residual Disability

provision, which provides for benefits when an insured is less than totally disabled.  As

Plaintiff has failed to show why the Court should invalidate the Policy's Residual Disability

provision as a violation of California law, the Court DENIES Plaintiff's MPSJ.

**B.    There Is a Genuine Issue of Material Fact as to Whether Plaintiff Is Totally Disabled Under the Policy**

Plaintiff's breach of contract claim is based on the argument that Plaintiff is entitled to

Total Disability benefits under the Policy and that Defendants breached the contract by

incorrectly interpreting the definition of disability and by only paying Plaintiff Residual

Disability benefits.  See Complaint ¶¶ 16-18.

The interpretation of an insurance policy is a question of law.  See Waller v. Truck

Ins. Exchange, Inc., 11 Cal. 4th 1, 18 (1995).  However, "the question of what amounts to

total disability presents a factual issue."  See Erreca, 19 Cal. 2d at 397.  Under California

law, an insured claiming benefits has the burden of proving that he is entitled to coverage

under a policy.  See Dym, 19 F. Supp. 2d at 1149 (citing Royal Globe Ins. Co. v. Whitaker,

181 Cal. App. 3d 532, 537 (1986)).  The Policy provides for Total Disability benefits when

the insured "cannot perform the substantial and material duties of [his] regular occupation."

See Policy at 11.  As the California interpretation of Total Disability applies to the Policy

definition, Hangarter, 373 F.3d at 1006, Plaintiff is totally disabled if he is unable to

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

perform the substantial and material duties of his regular occupation in the usual or customary way with reasonable continuity. See id.[8]

It is undisputed that Plaintiff's Regular Occupation under the Policy is determined by his occupational duties at the time of disability, not his occupational title. See MSJ at 13; Deposition of Agustin Argenal ("Argenal Dep.") at 199:2-5 (dkt. 33-4). As the Policy focuses on occupational duties and not merely on Plaintiff's job title, "the Court must take at least a partially functional view of the nature of Plaintiff's pre-disability occupational duties, rather than simply accepting that his inability to perform surgery post-disability has completely altered his in-office practice as well." See Gross, 319 F. Supp. 2d at 1152-53.

Until Plaintiff challenged his classification as residually disabled in August 2012, Plaintiff generally referred to himself as a "Physician" or "Cardiologist" in his communications with Defendants. See, e.g., Exh. 1 (Application for Insurance, signed February 22, 1988), Exh. 3 (Claimant Initial Statement, signed October 16, 2010) to Yenkel Decl. (dkt. 34). Now, Plaintiff refers to himself as an "Invasive/Interventional Cardiologist." See Complaint ¶ 10. The parties agree that invasive procedures[9] constituted only one component of Plaintiff's cardiology practice, which also included clinical, office-

---

[8] In addition, the Gross court explained that "[d]efining 'unable to perform' a given duty as being unable to perform that duty in Plaintiff's 'usual or customary way' respects the traditional California definition of total disability without reading the partial disability clause out of the policy." See Gross, 319 F. Supp. 2d at 1152.

[9] These included: performing cardioversions; insertion and management of central venous and pulmonary artery catheters; pericardiocentesis; temporary transvenous pacemaker placements; right and left heart cardiac catheterization and coronary angiographies; insertions of intra-aortic balloon pumps; placing stents; percutaneous rotational atherectomies; placement of automatic implantable cardiac defibrillators, and biventricular pacing; assisting other invasive and interventional cardiologists in their surgical procedures; making patient rounds which involved evaluating preoperative and postoperative patients; performing inpatient consultations in the Critical Intensive and Coronary Care Units, the Medical-Surgical floors, and the Emergency Room; and performing on-call responsibilities. See Argenal Decl. ¶ 6.

United States District Court
For the Northern District of California

based duties.  See Complaint ¶ 10 (describing that Plaintiff's duties include both hospital- and office-based procedures); MSJ at 13.  It is undisputed that since Plaintiff became disabled in 2010, he has not performed any surgical procedures but has continued to work approximately 36 hours per week at the Contra Costa Cardiology Medical Group performing clinical-related duties.[10]  See MPSJ at 4.  However, Plaintiff contends that these surgical procedures constituted the most important duty of his own occupation, and as he can no longer perform this duty, he is totally disabled under the Policy.  See Plaintiff's Opposition (Opp'n) at 19-20 (dkt. 42).

To determine the substantial and material duties of Plaintiff's Regular Occupation, Defendants relied on Plaintiff's signed statements submitted in support of his initial and ongoing disability claim, as well as Current Procedural Terminology ("CPT") billing codes and tax records provided by Plaintiff, which detail the procedures he performed and the income derived from those procedures before his disability in 2010.  See MSJ at 6-8.  After receiving Plaintiff's CPT codes and tax records, Reassure analyzed the procedures and income derived from those procedures for the pre-disability time period from January to October 2010.  See MSJ at 8.  Reassure's findings included the following:

---

[10] Plaintiff states that other than the way he moves around, there is "no significant difference" between his ability to perform the duties of his office practice pre-disability and today.  See Argenal Dep. at 64:15-18.  Plaintiff continues to work Monday through Thursday, at least eight hours per day, and is scheduled to see patients every 15 minutes.  Id. at 40.  Plaintiff estimates that he continues to treat 1500 to 2000 patients, and in addition to seeing new patients, greater than 60% of his patients are those he treated before his disability.  Id. at 42, 45, 146-47.  Plaintiff continues to perform the same clinical-based procedures that he did pre-disability, including: evaluating, diagnosing, consulting, prescribing medication, and overseeing and interpreting test results.  Id. at 150-51, 153-54, 157.  At this point, Plaintiff does not intend to leave his office practice or retire.  Id. at 194.

United States District Court
For the Northern District of California

| Total # of Procedures per Month (average) | Clinical Based Procedures | Hospital Based Procedures |
|---|---|---|
| 1025 | 735<br>72% of total procedures | 290<br>28% of total procedures |
| Total Charges Generated per Month (average) | $ for Clinical Related Procedures | $ for Hospital Related Procedures |
| $278,317 | $170,890<br>61% of total | $107,427<br>39% of total |

Id.  Reassure asserts that it counted all duties that Plaintiff performed on call or while in the emergency room as hospital-based duties.  Id.; Yenkel Decl. ¶ 19.  Reassure concluded that under either assessment–number of procedures performed or charges derived from those procedures–the hospital-related duties that Plaintiff could no longer perform accounted for significantly less than half of his pre-disability work.  See MSJ at 8-9; Yenkel Decl. ¶¶ 19-20.

Plaintiff does not dispute the accuracy of Reassure's findings, and agrees that 61% of his pre-disability income was derived from office-based procedures, and that pre-disability procedures constituted 72% of the procedures he performed.  See Argenal Dep., Exh. D to Lariviere Decl. at 187-88, 190.  However, Plaintiff argues that this analysis does not comport with prior decisions like Gross, which also considered the amount of time that the insured spent performing duties.  See Plaintiff's Opp'n at 13 (citing Gross, 319 F. Supp. 2d at 1154).[11]  Plaintiff relies on his post-disability reconstruction of the time spent performing

---

[11] Although the Gross court considered time as a factor in determining the plaintiff's duties, the plaintiff never disputed the time breakdowns that he provided on his disability claim form.  See 319 F. Supp. 2d at 1148.  The court rejected the plaintiff's argument that his surgical duties were the only "important" duties of his regular occupation where his non-surgical duties comprised approximately 75% of his pre-disability practice.  Id.  Accordingly, the court held that "Plaintiff's inability to perform his surgical duties, standing alone, is insufficient to render him totally disabled," as "no reasonable jury could find that the plaintiff's surgical duties accounted for 80%, 90%, or even 50% of Plaintiff's pre-

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

each of his duties to show that his hospital duties constituted his substantial and material duties. See Plaintiff's Opp'n at 12-13. Plaintiff argues that before becoming disabled, he spent about 25 hours per week in the Cardiac Catheterization Laboratory performing invasive procedures, 25 hours per week conducting patient rounds at the John Muir Medical Center, and 20 hours per week on call. See Argenal Decl. ¶ 8. In total, Plaintiff estimates that he worked roughly 70 hours per week, or 77% of the week, performing hospital-related duties and an additional 20 hours per week at the Contra Costa Cardiology Medical Group office. Id.; Plaintiff's Opp'n at 13. Plaintiff argues that Defendants' analysis gives undue weight to Plaintiff's office-based work because those tasks only accounted for 23% of Plaintiff's time. See Plaintiff's Opp'n at 14.

Plaintiff's post-disability time reconstruction conflicts with the information he provided to Reassure as a part of his disability claim. Plaintiff completed his Claimant Initial Statement ("CIS") on October 16, 2010. See Exh. 3 to Yenkel Decl. (dkt. 27), at 2. Question 21 of the CIS asked Plaintiff to list his occupational duties "in order of most to least important." Id. Plaintiff provided the following responses:

| Occupational Duties | % of time | Frequency |
|---|---|---|
| Patient care office visits/consult | 40% | Daily |
| Patient hospital visits/consults | 20% | Daily |
| EKG/echo/stress testing | 5-10% | Daily |
| Hospital procedures Caths/PTCA's/ Stenting/Pacemakers/ICD | > ~ 30% | Daily |

disability practice." Id. at 1148-49.

United States District Court
For the Northern District of California

Id.  In a December 15, 2010 meeting with Defendants' field representative, Margo Jenkins, Plaintiff estimated that he might be able to return to 50% of his job-related duties, and indicated that this 50% would involve the clinical work he is currently doing.  See Exh. D to MacDougall Decl. at 7 (dkt. 42-1).  Since claiming that he has been erroneously classified as residually (and not totally) disabled, Plaintiff contends that his prior assessments are inaccurate.  See Exh. I to MacDougall Decl. ¶ 11  (August 12, 2012 letter from Plaintiff) ("The majority of my time was spent on duties in the hospital and cardiac catheterization laboratory.  When I initially filled out an occupation assessment I did not realize the importance that would be placed on this nor did I spend much time calculating my work hours or duties.  My responses were rather cavalier and 'off the cuff.' . . .  Also when I met with the field representative I did not realize the importance that answers . . . would carry").

Here, the conflicting evidence regarding the substantial and material duties of Plaintiff's Regular Occupation creates a genuine dispute of material fact.  Defendants do not argue that Plaintiff must be unable to perform all of the duties of his Regular Occupation to be totally disabled.[12]  Rather, Defendants rely on the Erreca standard that "the insured is not totally disabled if he is physically and mentally capable of performing a substantial portion of the work connected with his employment."  See MSJ at 14 (citing Erreca, 19 Cal. 2d at 396); see also Hecht v. Paul Revere Life Ins. Co., 168 Cal. App. 4th 30, 33 (2008).  If

_____

[12] Courts have interpreted Total Disability provisions to require an inability to perform all of the substantial and material duties of the insured's Regular Occupation where the policy's Residual Disability provision explicitly requires an inability to perform "one or more" of the substantial and material duties.  See Helus, 309 F. Supp. 2d at 1178-79; Dym, 19 F. Supp. 2d at 1150.  Here, the Residual Disability provision does not require that Plaintiff be unable to perform "one or more" of his substantial and material duties, and thus it does not warrant the same reading of the Total Disability provision as in Helus and Dym.  See Scammacca v. Royal Maccabees Life Ins. Co., 9 Fed. Appx. 608, 610 (2001) (unpublished) (finding Dym inapposite where the Residual Disability provision contained no language regarding duties).

United States District Court
For the Northern District of California

1   Plaintiff's calculation that his hospital duties constituted 77% of his pre-disability duties is

2   correct, then the uncontested fact that Plaintiff is no longer able to perform those duties

3   could allow a reasonable jury to find Plaintiff totally disabled because he is no longer

4   performing a "substantial portion" of his work.[13]   As there is a material dispute about

5   Plaintiff's ability to perform the substantial and material duties of his Regular Occupation,

6   the Court DENIES Defendants' Motion for Summary Judgment as to the breach of contract

7   claim.

8   

9   **C.      Plaintiff Fails to Show that Defendants Acted in Bad Faith**

10          Every insurance contract contains an implied covenant of good faith and fair dealing.

11   See Progressive West Ins. Co. v. Sup. Ct., 135 Cal. App. 4th 263, 276 (2005).  A breach of

12   the covenant "involves something beyond breach of the contractual duty itself," and

13   "implies unfair dealing rather than mistaken judgment."  Id. at 277.  To prove a bad faith

14   claim: "(1) benefits due under the policy must have been withheld; and (2) the reason for

15   withholding benefits must have been unreasonable or without proper cause."  See Helus,

16   309 F. Supp. 2d at 1183 (quoting Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1151

17   (1990)).  However, even where benefits are due under the policy, summary judgment for the

18   insurer may be appropriate where the insurer acted reasonably.  See Franceschi v. American

---

[13] At oral argument, Plaintiff's counsel cited McGregor v. Paul Revere Life Ins. Co., 92 Fed. Appx. 412 (9th Cir. 2004), for the proposition that a plaintiff is totally disabled if she cannot  perform the most important part of her occupation.  In McGregor, the Ninth Circuit held that a disabled insured's inability to type rendered her unable to perform all of the "important duties" of her occupation as a court reporter, and thus she was totally disabled under the policy despite her ability to proofread and edit transcripts stenotyped by other court reporters.  See 92 Fed. Appx. at 415.  Here, the Court finds McGregor distinguishable, because whereas a court reporter must necessarily be able to type to perform her occupation as a court reporter, it is undisputed that Plaintiff continues to perform some duties of a cardiologist.  Accordingly, there remains a genuine dispute of material fact as to whether Plaintiff is able to perform the substantial and material duties of his Regular Occupation, and summary judgment as to this issue is not warranted.

United States District Court
For the Northern District of California

1    Motorists Ins. Co., 852 F.2d 1217, 1220 (9th Cir. 1988).  Under California law, a "court can

2    conclude as a matter of law that an insured's denial of a claim is not unreasonable, so long

3    as there existed a genuine issue" or "genuine dispute" about coverage, whether the dispute

4    is legal or factual.  See Guebara v. Allstate Ins. Co., 237 F.3d 987, 992-94 (9th Cir. 2001).

5

6        Plaintiff argues that Defendants acted in bad faith as a result of their "unfair and

7    unreasonable" handling of Plaintiff's claim.  See Plaintiff's Opp'n at 20.  Specifically,

8    Plaintiff asserts that there is not a genuine dispute over Plaintiff's disabilities, yet

9    Defendants are paying Plaintiff the incorrect disability benefits because they applied the

10   wrong definition of Total Disability.  Id.  Plaintiff's evidence of bad faith is limited to two

11   letters sent by Defendants to Plaintiff: one dated October 5, 2012, which included the

12   California "any occupation" definition, and one dated November 13, 2012, which includes,

13   as Plaintiff acknowledges, "the full and correct definition" of "own occupation" Total

14   Disability.  Id. at 21.  These letters, Plaintiff concludes, show that "Defendants knew the

15   California definition for Total Disability and failed to apply it."  Id.

16        In a supporting declaration, Plaintiff's counsel states that in the deposition of

17   Defendants' Person Most Knowledgeable, Wanda Yenkel, Ms. Yenkel testified that she was

18   aware that Defendants are required to apply the California definition in determining total

19   disability.  See Exh. N to MacDougall Decl. at 106.  Plaintiff implies that by including the

20   "any occupation" version of the California definition rather than the "own occupation"

21   language in a letter to Plaintiff, Ms. Yenkel acted in bad faith and falsely represented the

22   applicable definition.  See MacDougall Decl. ¶ 16.  However, Plaintiff has not shown that

23   he relied on the "any occupation" language in any way, and as he had purchased an "own

24

25

26

27

28

17

United States District Court
For the Northern District of California

occupation" rider under the Policy and had been paid benefits for two years under that rider, the inadvertent inclusion of the inapplicable "any occupation" California definition is not a genuine issue of material fact for either the bad faith or the fraud claim. See Celotex, 477 U.S. at 324-25 (explaining that once the moving party has satisfied its initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial").

In addition, Plaintiff asserts that the California definition of Total Disability contains three elements–(1) inability to perform the substantial and material duties of one's own occupation; (2) in the usual and customary way; (3) with reasonable continuity. See Plaintiff's Reply at 2 (dkt. 30). Plaintiff concludes, again without citing any authority, that "[a]ny definition that does not include all three of those elements is not a correct reflection of California law." Id. However, "California law does not require insurers to quote the exact language from Erreca . . . when defining disability. Rather it is the insurer's application of the definition that matters." See Ellena v. Standard Ins. Co., No. 12-5401, 2013 WL 6492318, at *6 (N.D. Cal. Dec. 10, 2013) (citing Hangarter, 373 F.3d at 1007).

Here, Reassure did include the full and correct California definition from Erreca in its November 13, 2012 letter to Plaintiff denying Total Disability benefits. See Exh. 8 to Yenkel Decl. at 3 ("With respect to Dr. Argenal's claim for total disability benefits, we utilized the California definition"). Further, "the case law dealing with the definition of 'own occupation' disability does not expressly preclude the language used by Defendant. . . . Absent some clear statement from the California courts that Defendant's definition is wrong, the Court cannot find that Defendant's use of that definition constitutes bad faith." See Ellena, 2013 WL 6492318, at *6 (citing Filippo Indus., Inc. v. Sun Ins. Co. of New

United States District Court
For the Northern District of California

York, 74 Cal. App. 4th 1429, 1438-39 (1999)).  Plaintiff has put forth no evidence or case law[14] to support its contention that Defendants refused to apply the California definition or applied the "wrong definition" of Total Disability to Plaintiff's claim.

Other than applying the wrong definition of Total Disability, Plaintiff does not argue that Defendants improperly handled his claim in any way.[15]  Indeed, Plaintiff does not dispute that Defendants have paid Residual Disability benefits promptly and without interruption since he became disabled.  See Argenal Dep. at 209.  Further, Plaintiff agreed that he had no complaints about how Reassure handled his claim when it started paying Residual Disability benefits.  Id. at 229-30.  Ultimately, Defendants did not act unreasonably in paying Plaintiff's disability benefits under the Residual Disability provision and not the Total Disability provision, as "[i]t is not unreasonable for an insurer to resolve good faith doubts about the claim against the claimant."  See Cardiner v. Provident Life & Acc. Ins. Co., 158 F. Supp. 2d 1088, 1105 (C.D. Cal. 2001).  As discussed above, there was a genuine dispute as to Plaintiff's claim for Total Disability benefits.  While a reasonable jury could find that Plaintiff is totally disabled under the Policy, and that therefore

---

[14] Although Plaintiff does not provide any authority for its bad faith claim, a California court has found an insurer liable for bad faith when it denied coverage based on an overly restrictive policy interpretation or standard known to be improper.  See Love, 221 Cal. App. 3d at 1148 (citing Moore v. American United Life Ins. Co., 150 Cal. App. 3d 610, 637-38 (1984)).  In Moore, the non-occupational insurance policy defined "total disability" as "a disability resulting from bodily injury or disease which wholly prevented the employee from engaging in any occupation or employment for compensation, profit, or gain."  See 150 Cal. App. 3d at 617 (internal citations omitted).  The court held that the policy language misstated California law as defined by Erreca because of its unduly restrictive language.  Id. at 619.  Here, Plaintiff has not shown that the Policy's definition of Total Disability conflicts with Erreca or is otherwise overly restrictive.

[15] In his Complaint, Plaintiff alleges a number of wrongdoings committed by Defendants in handling Plaintiff's claim.  See Complaint ¶ 23.  Plaintiff does not argue in his Opposition or produce evidence that any of these acts occurred, thus the Court limits its analysis to the issue of the definition of disability.

United States District Court
For the Northern District of California

Defendants breached the contract, the evidence shows that Defendants had a reasonable basis to award benefits under the Residual Disability provision.  See Cardiner, 158 F. Supp. 2d at 1105; Scammacca, 9 Fed. Appx. at 611 (affirming summary judgment against the plaintiff on a bad faith claim where the insurer's decision to deny benefits was supported by a reasonable interpretation of the policy and the insurer did not "turn a blind eye toward, or overlook due to dilatoriness, facts or information supporting [the plaintiff's] claim"). Therefore, the Court GRANTS summary judgment for Defendants as to the bad faith claim.

### D.    Plaintiff Fails to Show Fraud

The elements of an intentional misrepresentation, or fraud, claim are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage.  See Agosta v. Astor, 120 Cal. App. 4th 596, 599 (2004).  In order to establish fraud, "a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action.  General and conclusory claims of fraud will not suffice."  See Conrad v. Bank of America, 45 Cal. App. 4th 133, 156 (1996).

Plaintiff argues that Defendants made a false representation when they stated that the Policy definition was the correct definition of Total Disability "all the while knowing that the California definition was the only correct standard to apply."  See Plaintiff's Opp'n at 21.  Plaintiff attempts to satisfy the first two elements of fraud by stating that "Defendants knew the correct definition, it was at the front of the claims file, and therefore [they] had knowledge of the falsity."  Id.  Next, Plaintiff asserts that "it would be impossible to draw any conclusion other than the Defendants intended Dr. Argenal to rely upon what they told him regarding the language of his policy."  Id.  Plaintiff argues that he "absolutely"

United States District Court
For the Northern District of California

justifiably relied on the statements about the policy definition as "an insurance carrier has a fiduciary duty to the insured." Id.  Other than having benefits paid under the Residual Disability provision instead of the Total Disability provision, Plaintiff suffered no damages as a result of any statements made by Defendants.

Plaintiff's vague and conclusory allegations are insufficient to establish fraud.  See Celotex, 477 U.S. at 324 (noting that "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial") (internal citations omitted).  Plaintiff has produced no evidence to show that the Policy's definitions are false, incorrect, or invalid, or that any individual employed by Defendants who communicated with Plaintiff had knowledge of this falsity. See Ellena, 2013 WL 6492318, at *8 (granting summary judgment for the insurer where the plaintiff failed to offer any evidence of knowledge and intent to defraud, as "the law on own occupation disability insurance is not settled, and thus Defendant could have reasonably believed that the Policy complied with California law").  Plaintiff points to no specific representation made by Defendants that he relied on, either in obtaining the Policy or the Amendment, or in filing a claim for disability benefits.  As Plaintiff fails to establish a number of elements for a fraud cause of action, the Court GRANTS summary judgment for Defendants on the intentional misrepresentation claim.

**E.      Plaintiff's Request for Punitive Damages Is Moot**

In California, punitive damages are available if Plaintiff can show by clear and convincing evidence that Defendants are guilty of malice, oppression, or fraud.  See Cal.

Civ. Code § 3294.  The Court is granting summary judgment for Defendants on the fraud claim, thus Plaintiff is not entitled to punitive damages on that claim.  See Helus, 309 F. Supp. 2d at 1185; Scammacca, 9 Fed. Appx. at 611.  Therefore, the Court GRANTS summary judgment for Defendants on punitive damages.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's MPSJ; DENIES Defendants' MSJ as to the breach of contract claim; GRANTS Defendants' MSJ as to the bad faith claim; GRANTS Defendants' MSJ as to the fraud claim; and GRANTS Defendants' MSJ as to punitive damages.

**IT IS SO ORDERED.**

Dated: April 28, 2014



CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE